IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Starr Indemnity & Liability Company, \*
*as subrogee of Jet Zee, LLC* \*
\*
v.                                            \*         Civil No. CCB-18-3326
\*
\*
United States of America                 \*
\*

## MEMORANDUM

This dispute arises from the seizure of an aircraft by the United States Custom and Border Protection ("CBP"). The plaintiff, Starr Indemnity & Liability Company ("Starr Indemnity"), subsequently brought a tort action against defendant United States of America ("the government") under the Federal Tort Claims Act ("FTCA"). Pending before the court is the government's motion to dismiss the complaint for lack of subject matter jurisdiction. The issues have been briefed and no oral argument is necessary.[1] *See* Local Rule 105.6 (D. Md. 2018). For the reasons outlined below, the court will grant the motion.

### FACTUAL AND PROCEDURAL HISTORY

In 2016, Jet Zee, Inc. was the owner of a 1987 Beechjet 400 aircraft ("the aircraft"), which was insured by plaintiff Starr Indemnity for $750,000. (Compl. ¶ 2, ECF No. 1). On March 2, 2016, Detective Joseph Grant of the Baltimore County Police Department and Special Agent Milton Lynn of the U.S. Department of Homeland Security applied for a warrant to search the aircraft and seize certain items suspected to be onboard. (Def.'s Mot. to Dismiss ["Def's Mot."] Ex. A at 4–9, ECF No. 10-2). In support of the warrant application, Grant and Lynn

---

[1] Starr Indemnity filed a motion requesting a hearing on the government's motion to dismiss. For the reasons discussed in this opinion, the court finds that a hearing is unnecessary. Accordingly, the motion will be denied.

1

provided an affidavit stating that they had probable cause to believe that the aircraft "contain[ed] cocaine, packaging material, fruits and instrumentalities of the crime of possession with intent to distribute [or importation of] cocaine," as well as cash proceeds from suspected drug trafficking (*Id.*). The Honorable John J. Nagle of the Circuit Court for Baltimore County issued the warrant on March 2, 2016. (*Id.* at 9). Later that day, the aircraft was searched and seized at Martin State Airport in Middle River, Maryland. (Compl. ¶ 3). The search uncovered $1,039,205 in U.S. currency, which had been vacuum-packed, sorted by denomination, and stored in a black roller bag in the cargo hold of the aircraft. (Def.'s Mot. Ex. B ¶20, ECF No. 10-3). No cocaine was discovered during the search, but "a Baltimore County Police Department K-9 certified in narcotics odor detection . . . gave a positive indication to the presence of narcotics [] on the plane." (*Id.* ¶ 18). Starr Indemnity's representative[2] immediately attempted to negotiate the return of the aircraft with the U.S. Attorney's office. (*Id.* ¶ 15).

On April 22, 2016, Special Agent Lynn applied for a second search warrant of the aircraft, which was issued by the Honorable Beth P. Gesner of the United States District Court of the District of Maryland. (Def.'s Mot. Ex. B, ECF No. 10-3). Lynn stated that a second search of the aircraft was necessary to perform a thorough search for hidden compartments, or "traps," which "are utilized in the furtherance of bulk cash and drug smuggling." (*Id.* ¶ 24). According to Lynn, a search for "traps" was not possible during the execution of the original search warrant because, due to short notice, "it was logistically not possible to arrange for the presence of a subject matter expert that could search the plane for hidden compartments without possibly compromising the air-worthiness of the plane." (*Id.*).

---

[2] Starr Indemnity states that Gregg Pike of Starr Adjustment Services, Inc. acted as its agent during negotiations to return the aircraft. (Compl. ¶ 15).

2

On or about August 3, 2016, CBP sent a "Seizure Notice" to Starr Indemnity's representative. (Pl.'s Resp. in Opp. to Def.'s Mot. ["Pl.'s Resp."] Ex. 3 at 2, ECF 11-3). The seizure notice stated that, pursuant to 18 U.S.C. § 981,[3] CBP had begun forfeiture proceedings with respect to the aircraft because it had probable cause to believe that the aircraft was involved in money laundering in violation of 18 U.S.C. § 1956(a)(7). (*Id.*). Starr Indemnity subsequently sent responsive notices challenging the validity of the forfeiture to CBP, to which CBP did not respond. (Pl.'s Resp. at 18).

On or about October 13, 2016, Starr Indemnity filed a claim against CBP for damages under the FTCA. (Compl. ¶ 20; Pl.'s Resp. Ex. 7). CBP did not respond to this claim. (Compl. ¶ 21). On February 28, 2017, Starr Indemnity filed a motion with this court under Federal Rule of Civil Procedure 41(g) seeking the return of the aircraft, claiming, *inter alia*, that the original seizure of the aircraft violated the search warrant issued on March 2, 2016. (Compl. ¶ 22; *Starr Indemnity & Liability Co. v. United States CBP*, No. 17-00579-JFM, ECF No. 1 ¶ 11). On or about June 13, 2017, the parties reached a settlement whereby CBP returned the aircraft to Starr Indemnity. (Compl. ¶ 23). The settlement agreement specifically provided that Starr Indemnity "[did] not release any claim that may be brought under the Federal Torts Claim Act for damages" arising from CBP's seizure of the aircraft. (*Id.* ¶ 24–25). CBP returned the aircraft on June 29, 2017. (*Id.* ¶ 4). Starr Indemnity examined the damage to the aircraft, determined that it was a "total loss," and made payments to Jet Zee, Inc. pursuant to their insurance agreement. (*Id.* ¶ 26–27). Consequently, Starr Indemnity became subrogated by operation of law to Jet Zee, Inc.'s interest in the aircraft. (*Id.* ¶ 6).

---

[3] The federal civil forfeiture statute, 18 U.S. § 981, provides, in relevant part, that the government may forfeit "[a]ny property . . . involved in a transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property."

3

On or about November 30, 2017, Starr Indemnity filed a final administrative claim for damages under the FTCA. (*Id.* ¶ 28). Starr Indemnity received a letter from CBP on August 6, 2018, denying the claim. (*Id.* ¶ 40). CBP stated that "the claim . . . falls squarely within specific exceptions to the waiver of sovereign immunity afforded by the FTCA . . . Absent an express waiver of sovereign immunity, the United States cannot be held liable." (*Id.* ¶ 41).

Starr Indemnity filed its complaint in the instant action on October 30, 2018. (ECF No. 1). The government filed a motion to dismiss for lack of jurisdiction, Starr Indemnity filed its response in opposition, and the government filed a reply to Starr Indemnity's response. On April 9, 2019, Starr Indemnity requested a hearing on the government's motion to dismiss.

## STANDARD OF REVIEW

A motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "addresses whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of his claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The plaintiff bears the burden of establishing subject matter jurisdiction. *Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015). A defendant may challenge subject matter jurisdiction in two ways: (1) "by attacking the veracity of the allegations contained in the complaint"; or (2) "by contending that, even assuming that the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper." *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). When a defendant uses the latter method to contest subject matter jurisdiction, the plaintiff "is afforded the same procedural protection as he would receive under Rule 12(b)(6) consideration." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219

(4th Cir. 1982). Accordingly, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*[4]

## ANALYSIS

### I. The Re-Waiver Provision

The government asserts that Starr Indemnity's claim must be dismissed for lack of subject matter jurisdiction because the government has not waived sovereign immunity. (Def.'s Mot. at 5). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Federal Deposit Ins. Co. (FDIC) v. Meyer*, 510 U.S. 471, 475 (1994); *see also Global Mail Ltd. v. United States Postal Service*, 142 F.3d 208, 210 (4th Cir. 1998). The FTCA waives the government's sovereign immunity for certain torts committed by federal employees, 28 U.S.C. § 1346(b); *FDIC*, 510 U.S. at 475, but the waiver is limited by several exceptions. One exception (the "detention of goods" exception) pertains to claims arising from "the detention of any goods, merchandise, or other property by any officer of customs . . . or any other law enforcement officer." 28 U.S.C. § 2680(c); *Kosak v. United States*, 465 U.S. 848, 854 (1984). In 2000, Congress passed the Civil Asset Forfeiture Reform Act ("CAFRA"), which amended § 2680(c) and created an "exception to the exception." *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 221, 239 (2008). Pursuant to § 2680(c)(1) ("the re-waiver provision"), the government is *not* immune from suits arising from the detention of property by law enforcement

---

[4] The government appears to challenge subject matter jurisdiction using the latter method: "by contending that, even assuming that the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper." *See Durden*, 736 F.3d at 300. (Def.'s Reply to Pl.'s Resp. ["Def.'s Reply"] at 7 n.1, ECF No. 13). The court will thus analyze the motion to dismiss under this standard. In so doing, the court may take judicial notice of public records, such as affidavits for search warrants. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *cf. Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64–65 (4th Cir. 1989) (holding that search warrant affidavits are judicial records to which the public has a common law qualified right of access). Whether considered under Rule 12(b)(1) or Rule 12(b)(6), dismissal is appropriate.

5

"if the property was seized for the purpose of forfeiture." 18 U.S.C. § 2680(c)(1); *Ali*, 552 U.S. at 221.[5]

The government and Starr Indemnity do not dispute that (1) law enforcement seized the aircraft and (2) later instituted forfeiture proceedings against it. The parties do, however, dispute the meaning of the phrase "seized for the purpose of forfeiture." The government contends that "seized for the purpose of forfeiture" means "seized for the *sole* purpose of forfeiture." (Def.'s Reply to Pl.'s Resp. ["Def.'s Reply"] at 1, ECF No. 13). In support of this position, the government relies on the interpretation of the re-waiver provision first articulated by the Ninth Circuit in *Foster v. United States*, 522 F.3d 1071, 1075 (9th Cir. 2008) ("We hold that, under CAFRA, the re-waiver of sovereign immunity in § 2680(c)(1)–(4) applies only to property seized *solely* for the purpose of forfeiture.") (emphasis added). Starr Indemnity, by contrast, argues that *Foster* was wrongly decided, and that the re-waiver provision should apply even when forfeiture was not the sole purpose of seizure. (Pl.'s Resp. at 2).

As the Ninth Circuit noted in *Foster*, "waivers of sovereign immunity must be construed strictly in favor of the sovereign." *Foster*, 522 F.3d at 1074 (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)). As in the instant case, the government in *Foster* argued that the re-waiver provision only applies to property seized for the sole purpose of forfeiture. *Id.* at 1075. Although the *Foster* court found that the text and legislative history only "provide[d] *some* support for a narrow reading of the re-waiver [provision]," *id.* at 1079 (emphasis added), it concluded that when

---

[5] In full, 28 U.S.C. § 2680(c) provides that § 1346(b) applies if
    (1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
    (2) the interest of the claimant was not forfeited;
    (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
    (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.
28 U.S.C. § 2680 (c)(1)–(4).

interpreting a waiver of sovereign immunity, the court "must interpret any remaining ambiguity in the scope of CAFRA's re-waiver of sovereign immunity in favor of the United States," *id.* Additionally, the *Foster* court reasoned that a broader interpretation of the re-waiver provision "could hamper law enforcement officers' effectiveness" by "redirect[ing] their attention from the possibility of danger in executing the search warrant to the possibility of civil damages." *Id.* at 1078. The *Foster* court also noted that, as a practical matter, "[w]hen the government seizes property for law enforcement purposes . . . forfeiture often follows eventually." *Id.* at 1079. Thus, an interpretation of the re-waiver provision that would waive sovereign immunity whenever property is forfeited would largely destroy the detention of goods exception to the FTCA. *Id.*

This court is persuaded by the Ninth Circuit's reasoning in *Foster* and finds that the re-waiver provision applies only to claims arising from detention of property seized for the sole purpose of forfeiture. In so finding, this court joins numerous other circuit and district courts that have adopted, or otherwise expressed agreement with, this interpretation of the re-waiver provision. *See, e.g., Smoke Shop, LLC v. United States*, 761 F.3d 779, 784 (7th Cir. 2014) ("We now formally adopt Foster's sole-purpose test [in interpreting the re-waiver provision]."); *Shigemura v. United States*, 504 Fed. App'x 678, 680 (10th Cir. 2012) (affirming the district court's reliance on *Foster* in granting a motion to dismiss for lack of subject matter jurisdiction; stating, "[w]e find *Foster* to be persuasive");[6] *Bowens v. United States Dept. of Justice*, 415 Fed. App'x 340, 343 (3rd Cir. 2011) (holding that the re-waiver provision "applies only to property seized *solely* for the purpose of forfeiture") (internal quotations omitted); *Petrovic v. United States*, No. 4:16-CV-1744-SNLJ, 2017 WL 1058852, at *2 (E.D. Mo. Mar. 21, 2017), *aff'd* No.

---

[6] Unpublished cases are cited not for their precedential value but for the persuasiveness of their reasoning.

7

17-1717, 2017 WL 4844252 (8th Cir. Sept. 20, 2017) (applying *Foster*); *Fawcett v. United States*, No. 4:13CV01828, 2014 WL 4183683, at *2 (N.D. Ohio Aug. 21, 2014) (applying *Foster* and noting that *Foster* is "well reasoned"); *Akeem v. United States*, 854 F. Supp. 2d. 289, 296 (E.D.N.Y. 2012) (applying *Foster*).

## II.     Purpose of the Seizure

Starr Indemnity claims that the government seized the aircraft for the purpose of forfeiture, (Compl. ¶¶ 9, 49–50), while the government asserts that the aircraft was seized in furtherance of a criminal investigation. (Def.'s Reply at 7). Pursuant to the analysis in Part I of this opinion, the court lacks subject matter jurisdiction in this case unless Starr Indemnity can establish that forfeiture was the government's sole reason for seizure. See *Demetres*, 776 F.3d at 272 ("The burden of establishing subject matter jurisdiction rests with the plaintiff."). In its response to the government's motion to dismiss, Starr Indemnity alleges—for the first time—that the aircraft was seized *solely* for the purpose of forfeiture. (Pl.'s Resp. at 28). Starr Indemnity's only support for this allegation is the fact that the March 2, 2016, search warrant does not, on its face, appear to authorize the seizure of the aircraft itself.[7] (*Id.* at 28–29). Thus, argues Starr Indemnity, the only possible reason for the seizure of the aircraft was forfeiture. (*Id.*).[8]

While a court ruling on a motion to dismiss must accept the plaintiff's factual allegations as true, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007); *see also McCleary-Evans v.*

---

[7] The warrant issued on March 2, 2016, authorizes a search of the aircraft and seizure of certain enumerated items believed to be onboard the aircraft. (Search Warrant, Def.'s Mot. Ex. A at 2–3, ECF No. 10-2).

[8] The complaint itself does not allege that the aircraft was seized solely for the purpose of forfeiture. A complaint may not be amended by way of statements in an opposition to a motion to dismiss. *See* Fed. R. Civ. P. 15(a) (prescribing the proper methods for amending pleadings); *Freilich v. Board of Dirs. of Upper Chesapeake Health, Inc.*, 142 F. Supp. 2d 679, 691 n. 7 (D. Md. 2001) (noting that in the absence of an amended complaint, the court will not consider a new claim raised in response to a motion to dismiss), *aff'd*, 313 F.3d 205 (4th Cir. 2002). But even if the complaint were considered as containing an allegation that the aircraft was seized "solely" for the purpose of forfeiture, it would not be sufficient for the reasons explained in this opinion.

*Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Starr Indemnity's claim regarding the purpose of the seizure does not meet this standard. The March 2, 2016, search warrant demonstrates that the government had probable cause to believe the aircraft was involved in illegal activity; the April 22, 2016, search warrant suggests that, almost two months later, the government was still investigating the aircraft's alleged connection to a crime. Any claim that the seizure of the aircraft was unconnected to this criminal investigation is entirely speculative. Whether the government exceeded the scope of the March 2, 2016, search warrant in seizing the aircraft is not the issue.[9] Starr Indemnity does not plausibly allege that the government's *only* reason for seizure was forfeiture. *See McCleary-Evans*, 780 F.3d at 587 (quoting *Twombly*, 550 U.S. at 561) ("[A] complaint [does not] survive a motion to dismiss whenever the pleadings [leave] open the possibility that a plaintiff might later establish some set of [undisclosed] facts to support recovery.") (internal quotation marks omitted). Moreover, Starr Indemnity's assertion that "the defendants seized the property for the purpose of forfeiture" is a legal conclusion not entitled to the presumption of truth. *See Smoke Shop*, 761 F.3d at 785 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, Starr Indemnity cannot meet its burden of establishing subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the court will grant the government's motion to dismiss. A separate order follows.

9/11/19
Date

CCB
Catherine C. Blake
United States District Judge

---

[9] It would appear necessary to seize the aircraft, at least temporarily, in order to search it.